UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
JAMES SMITH,                       )
                                   )
    Plaintiff,                     )
                                   )
    v.                             )    Civil Action No. 08-2216 (RWR)
                                   )
DISTRICT OF COLUMBIA,              )
                                   )
    Defendant.                     )
_____)

## MEMORANDUM OPINION

Plaintiff James Smith brought this action on behalf of his minor son, O.E., under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., challenging a hearing officer's dismissal of his due process complaint that alleged that the District of Columbia Public Schools ("DCPS") denied O.E. a free, appropriate public education ("FAPE") by failing to timely conduct and review comprehensive psychological, speech and language, social history, and educational reevaluations of O.E. The parties have cross-moved for summary judgment. Because Smith has not shown that any failure to timely conduct the reevaluations affected his or O.E.'s substantive rights, Smith's motion for summary judgment will be denied and the District of Columbia's motion for summary judgment will be granted.

## BACKGROUND

When Smith filed this complaint, O.E. was a twelve year-old student eligible for special education enrolled at the Children's Guild, a full-time special education school. (Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue ¶¶ 1, 3.) After Smith requested a reevaluation of O.E., a multidisciplinary team ("MDT") convened on May 22, 2008 to assess O.E.'s educational progress. (Pl.'s Stmt. of Material Facts Not in Dispute ("Pl.'s Stmt.") ¶¶ 5-6.) Smith attended this meeting. (A.R. at 25.) The MDT observed that O.E.'s participation, behavior, and availability to learn had all greatly improved since the team last convened. (Id. at 26, 28.) O.E.'s evaluations were outdated (id. at 28), and even in light of the positive report, the MDT determined that psychological, speech and language, social history, and educational reevaluations of O.E. were appropriate. (Pl.'s Stmt. ¶ 8.) The MDT noted that O.E.'s "goals/objectives will remain the same until the completion of the [re]evaluations." (A.R. at 28.)

On July 23, 2008, Smith filed an administrative due process complaint, alleging that "[s]ince May 22, 2008, DCPS ha[d] not conducted and reviewed any of the ordered [re]evaluations." (Id. at 21.) A hearing officer convened a due process hearing on August 11, 2008. (Id. at 1.) In a written decision eleven days later, the hearing officer dismissed the complaint on the ground

that the D.C. Code required DCPS "to perform the evaluations" within 120 days of the request,[1] concluding that DCPS had until September 22, 2008 to conduct the reevaluations. (Id. at 5.) Meanwhile, DCPS conducted a speech and language reevaluation on August 6, 2008 and a comprehensive psychological reevaluation on September 5, 2008. (See Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J., and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem."), Ex. 1; Ex. 2.) Smith brought this action, challenging the hearing officer's dismissal.

## DISCUSSION

The parties have cross-moved for summary judgment under Federal Rule of Civil Procedure 56(c). Rule 56(c) provides for entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

[1] The hearing officer cited D.C. Code § 38-2501(a) to support his conclusion that a 120-day period applied. That code provision was repealed in 2007. See 2006 D.C. Legis. Serv. 16-269 (West). D.C. Code § 38-2561.02(a) is the provision that was in effect at the time of the due process hearing that contains the language that the hearing officer cited.

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IDEA "ensure[s] that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). "'[T]he primary vehicle for implementing'" IDEA's goals is the individualized education program ("IEP"), "'which the [IDEA] mandates for each child.'" Harris v. District of Columbia, 561 F. Supp. 2d 63, 65 (D.D.C. 2008) (second alteration in original) (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)). An IEP describes the nature of a child's disabilities, sets educational and functional goals for the child, and details the necessary steps a school must take to support the child's progress.[2] D.S. v. District of Columbia, 699 F. Supp. 2d 229, 233-34 (D.D.C. 2010) (citing 20 U.S.C. § 1414(d)(1)(A)). "Because the IEP must be 'tailored to the

---

[2] "A student's IEP is developed by a team that includes the student's parents, a regular education teacher, a special education teacher, a representative of the school district, an individual who can interpret evaluation results, personnel with particular knowledge of the student if applicable, and sometimes the student [himself]." T.T. v. District of Columbia, Civil Action No. 06-207 (JDB), 2007 WL 2111032, at *3 (D.D.C. July 23, 2007) (citing 20 U.S.C. § 1414(d)(1)(B)).

unique needs' of each child, it must be regularly revised in response to new information regarding the child's performance, behavior, and disabilities." Id. at 234 (internal citation omitted) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 181 (1982)). IDEA requires an initial evaluation of a child to determine if that child is eligible for special education. 20 U.S.C. § 1414(a)(1). A reevaluation of the child may take place if a local educational agency ("LEA") determines one is warranted or if the child's parents or teachers request one, 20 U.S.C. § 1414(a)(2)(A), and the MDT must base the child's IEP on the most recent evaluation. 20 U.S.C. § 1414(d)(3)(A)(iii).

"IDEA allows parents to file administrative complaints and request due process hearings 'with respect to any matter relating to the . . . evaluation . . . of the child, or the provision of a [FAPE] to such child.'" Wright v. District of Columbia, Civil Action No. 05-990 (RWR), 2007 WL 1141582, at *2 (D.D.C. Apr. 17, 2007) (quoting 20 U.S.C. § 1415(b)(6)(A)). "Any party aggrieved by the findings and decisions made" at a due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States[.]" 20 U.S.C. § 1415(i)(2)(A). A reviewing court is to "review the administrative record, hear additional evidence if so requested by the parties, and, based on the preponderance of the evidence, . . . grant such relief as the court determines is

appropriate." Wright, 2007 WL 1141582, at *2 (internal quotation marks omitted); 20 U.S.C. § 1415(i)(2)(C). The administrative officer's findings must be given due weight, but less deference is called for than would normally be accorded an administrative decision. See Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988). "[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong[.]" Id. A court must consider whether the LEA has complied with the procedural requirements of IDEA and whether the IEP is "reasonably calculated to enable the child to receive educational benefits[,]" but a court should not substitute its own judgment for that of a school agency's regarding what is in the best educational interests of a student. Rowley, 458 U.S. at 206-07.

IDEA and its implementing regulations do not set a time frame within which an LEA must conduct a reevaluation after one is requested by a student's parent. See Herbin ex rel. Herbin v. District of Columbia, 362 F. Supp. 2d 254, 259 (D.D.C. 2005). In light of the lack of statutory guidance, Herbin concluded that "[r]eevaluations should be conducted in a 'reasonable period of time,' or 'without undue delay,' as determined in each individual case." Id. (quoting Office of Special Education Programs Policy Letter in Response to Inquiry from Jerry Saperstone, 21 Individuals with Disabilities Education Law Report 1127, 1129

(1995)). The District of Columbia argues, citing D.C. Code § 38-2561.02(a), that there is a 120-day deadline for conducting a reevaluation. (Def.'s Mem. at 8.) D.C. Code § 38-2561.02(a) provides that "DCPS shall assess or evaluate a student who may have a disability and who may require special education services within 120 days from the date that the student was referred for an evaluation or assessment." The provision does not apply explicitly to reevaluations, and interpreting "evaluation" to encompass reevaluations may not be consistent with the structure of IDEA, which contains separate sections detailing the procedures for "initial evaluations" and "reevaluations." See 20 U.S.C. § 1414(a). Additionally, D.C. Code § 38-2561.02(a) refers only to students who "may have a disability," which implies that they have not yet had initial evaluations that have determined conclusively that they are disabled. This language suggests the provision does not apply to reevaluations, which necessarily must follow initial evaluations. D.C. Code § 38-2561.02(a), then, will not be deemed to apply to the reevaluations that are at issue in this case, and the hearing officer may have erred by applying the 120-day time limit instead of conducting a fact-intensive inquiry to determine a reasonable period of time within which to reevaluate O.E.[3]

---

[3] Whether the hearing officer did err in this way is not conclusive.

However, a DCPS failure to reevaluate O.E. more quickly does not necessarily entitle Smith to relief. A failure to timely reevaluate is at base a procedural violation of IDEA. See LeSesne ex rel. B.F. v. District of Columbia, Civil Action No. 04-620 (CKK), 2005 WL 3276205, at *8 (D.D.C. July 26, 2005) (characterizing cases "where a student is seeking a reevaluation, but is already in a placement" as involving procedural violations of IDEA). "[P]rocedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE." Schoenbach v. District of Columbia, 309 F. Supp. 2d 71, 78 (D.D.C. 2004); 20 U.S.C. § 1415(f)(3)(E)(ii). Smith argues, citing Harris, that a failure to reevaluate is not a mere procedural violation of IDEA. (Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 11.) In Harris, 561 F. Supp. 2d at 64-65, DCPS took no action for over two years in response to a parent's request for reevaluation of her child's functional behavior. The court construed DCPS' two-year complete "failure to act on a request for an independent evaluation" as more than "a mere procedural inadequacy[.]" Id. at 68-69. This case, however, does not involve a two-year complete failure by DCPS to take any action on Smith's request for a reevaluation. DCPS conducted some of the requested evaluations in August and September of 2008. (See Def.'s Mem., Ex. 1; Ex. 2.) Even if the hearing officer had properly determined a reasonable procedural

time period for conducting the reevaluations and DCPS had not completed them all within that period, that would not necessarily end the analysis.

"[A]n IDEA claim is viable only if those [violations of] procedural [deadlines] affected the student's *substantive* rights." Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006); see also C.M. v. Bd. of Educ., 128 Fed. Appx. 876, 881 (3d Cir. 2005) (per curiam) ("[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable."). The plaintiff bears the burden of proving a violation of substantive rights. See Holdzclaw v. District of Columbia, 524 F. Supp. 2d 43, 48 (D.D.C. 2007); see also Kruvant v. District of Columbia, 99 Fed. Appx. 232, 233 (D.C. Cir. 2004) (denying parents relief because "although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parents' request, the [parents] have not shown that any harm resulted from that error"). "A delay does not affect substantive rights if the student's education would not have been different had there been no delay." D.R. ex rel. Robinson v. Gov't of D.C., 637 F. Supp. 2d 11, 18-19 (D.D.C. 2009) (finding that the defendant's delay affected the student's

substantive rights because the student's most recent IEP differed from the one previously issued).

Smith has not carried his burden of proof by pointing to evidence in the record demonstrating that O.E.'s education would have been different but for the delay. Although the May 22, 2008 MDT meeting notes state that the "goals/objectives [of the IEP] will remain the same until the completion of the [re]evaluations" (A.R. at 28), the notes provide no basis for concluding that there was any deficiency in the education O.E. received at the Children's Guild School. In fact, the team observed that O.E.'s "[p]articipation in academics has improved 100%[,]" "[h]e is behaving well[,]" and his "[t]eachers state he has done a complete turn around and is now available for learning." (A.R. at 26, 28.) Although Smith argued at the due process hearing that "the team says that they cannot discuss placement until the assessments are done, indicating that potentially his placement would change" (A.R. at 55), this was mere speculation, and there is no evidence in the record that O.E.'s placement would have changed had DCPS completed all the reevaluations sooner. Nor has Smith presented evidence that the reevaluations, once conducted, led to a change in O.E.'s placement or education.

Smith also argues, citing <u>Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.</u>, 267 F.3d 877 (9th Cir. 2001), that DCPS' failure to timely perform the reevaluations constituted a denial

of FAPE because it impeded his ability to participate in the decision-making process. (Pl.'s Mem. at 12-13.) The IDEA "guarantees parents of disabled children the opportunity to participate in the evaluation and placement process." Lesesne, 2005 WL 3276205, at *2; see also 20 U.S.C. §§ 1414(f), 1415(b)(1). While "not every technical violation of the procedural prerequisites of an IEP will invalidate its legitimacy . . . , procedural inadequacies that . . . seriously infringe upon the parents' opportunity to participate in the IEP formulation process . . . clearly result in the denial of a FAPE." A.I. ex rel. Iapalucci v. District of Columbia, 402 F. Supp. 2d 152, 164 (D.D.C. 2005) (internal quotation marks and citations omitted). In Annette J., 267 F.3d at 892-93, the school district failed to disclose to the student's parents the student's full records, which included reports that the student exhibited behavioral characteristics associated with autism. The court found that this "procedural violation[], which prevented Amanda's parents from learning critical medical information about their child," denied the student a FAPE because "Amanda's parents [were] prevented from participating fully, effectively, and in an informed manner in the development of Amanda's IEP[.]" Id. at 894.

Here, by contrast, Smith has presented no evidence supporting his assertion that he could not meaningfully

participate in the development of O.E.'s IEP. He attended the May 22, 2008 MDT meeting. (A.R. at 25.) The meeting adjourned so that the MDT could incorporate any new information gleaned from the reevaluations into O.E.'s IEP. (See id. at 26 ("We will reconvene once assessment[s] have been completed.").) Smith presents no evidence that the team met again before DCPS completed the reevaluations or that he was unable to participate in any follow up MDT meeting that took place because the reevaluations were not more timely completed. He therefore has not established that DCPS denied his right to participate meaningfully in the development of O.E.'s IEP. See T.T. v. District of Columbia, Civil Action No. 06-207 (JDB), 2007 WL 2111032, at *5 (D.D.C. July 23, 2007) (finding that the parent had an opportunity to participate meaningfully in the educational placement of the child when she assisted in developing the student's IEP at the MDT meeting).

## CONCLUSION

Smith has not shown that DCPS' failure to conduct the reevaluations here sooner affected substantive rights. Because Smith has not presented evidence of a substantive harm, either to himself or to O.E., no relief from the hearing officer's dismissal of the administrative complaint is warranted irrespective of whether the hearing officer erred by concluding that DCPS had 120 days to complete the reevaluations. No genuine

issues of material fact remain, and the defendant is entitled to judgment as a matter of law. Accordingly, the plaintiff's motion for summary judgment will be denied, and the defendant's motion for summary judgment will be granted. An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 30th day of November, 2010.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge